UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEONID NAIMARK,<br><br>             Plaintiff,<br><br>v.<br><br>BAE SYSTEMS INFORMATION AND ELECTRONIC SYSTEMS INTEGRATION INC.,<br><br>             Defendant. | Case No. 20-cv-10138-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                                                       **December 23, 2021**

## I.     Introduction

Plaintiff Leonid Naimark ("Naimark") has sued his former employer, BAE Systems Information and Electronic Systems Integration Inc. ("BAE") alleging age and disability discrimination, and retaliation in violation of Mass. Gen. L. c. 151B, § 4 (Counts I–III, V), and wrongful termination in violation of public policy (Count IV).  D. 1-1.  BAE has moved for summary judgment.  D. 50.  For the reasons stated below, the Court ALLOWS the motion.

## II.    Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law."  Santiago–Ramos v. Centennial P.R. Wireless Corp.,

217 F.3d 46, 52 (1st Cir. 2000). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

### III.   Factual Background

The following facts are undisputed unless otherwise noted and are drawn from the parties' statement of material facts, D. 52, and response to same, D. 62.[1]

####   A.   Naimark's Employment at BAE

Naimark worked for BAE, a defense, aerospace, and security contractor, as an engineer in its advanced technology R&D group from April 1, 2013 until June 13, 2018. D. 52 ¶¶ 1–3, 189. Beginning in 2016, Naimark worked on a project called VANA ("Vision Aided Navigation Architecture") funded by the Air Force Research Laboratory ("AFRL"). Id. ¶¶ 6–9. Michael

---

[1] Naimark's response, D. 62, disputes a small percentage of the 189 statements of fact included in BAE's submission, D. 52. As to the remainder of the facts not disputed in Naimark's response, those statements are admitted. See Plourde v. Sorin Grp. USA, Inc., No. 17-CV-10507-ADB, 2021 WL 736153, at *2 (D. Mass. Feb. 5, 2021) (citing L.R. 56.1). Even as to the purportedly disputed statements, Naimark has not, as Local Rule 56.1 requires, made "references to affidavits, depositions and other documentation" to dispute them, but rather asserts that such statements are inadmissible or argumentative, so the Court does, in its discretion, deem these facts admitted. See D. 62; Butters v. Wells Fargo Advisors, 10-cv-10072-MLW, 2012 WL 5959986, at *1–2 (D. Mass. Nov. 27, 2012) (quoting L.R. 56.1). Naimark has also submitted his own separate statement of facts, however, "submission of a separate statement of undisputed facts [by the opposing party] is not contemplated by the rule," and the Court need not consider them. See Terry v. SimplexGrinnell LP, No. 11-cv-40117-TSH, 2013 WL 1332240, at *1 (D. Mass. Mar. 28, 2013).

Richman ("Richman") was VANA's Program Manager. Id. Naimark's direct supervisor at the beginning of 2017 was Stephen DelMarco ("DelMarco"). Id. ¶ 5. Beginning in August 2017, Simone Bortolami ("Bortolami") became Naimark's direct supervisor. Id. ¶ 28.

### B.  2017 Performance Issues

In January 2017, Richman provided feedback to DelMarco for Naimark's midyear review, which observed that Naimark had strong technical capabilities, but critiqued, among other things, Naimark's use of time. Id. ¶ 13–14; D. 53-1 at 3. Specifically, Richman pointed out that Naimark was not spending sufficient time on billable work. Id. As Principal Investigator of VANA, Naimark had to ensure each VANA deliverable was of satisfactory quality and functionality. D. 52 ¶ 19. Naimark, however, was late to complete certain work that resulted in missing functionality, and certain software sent to AFRL had errors that prevented it from running correctly, requiring the VANA team to re-do work and send corrected software to AFRL. Id. ¶¶ 20–22.

In June 2017, Naimark gave a presentation on VANA at the Joint Navigation Conference. Id. ¶ 23. James Metzler ("Metzler"), the AFRL lead, was in attendance, as was Bortolami. Id. ¶¶ 8, 23. Bortolami observed that Naimark did not appear to have adequately prepared for the presentation. D. 59 ¶ 4. Metzler wrote to Richman that Naimark "had some issues managing time and getting through the presentation [and] [i]t didn't appear he had the flow of the presentation worked out beforehand to move through it efficiently." D. 53-3.

When Bortolami became Naimark's direct supervisor in August 2017, he received pushback from Naimark in several respects, like meeting deadlines for tasks Bortolami assigned him. D. 52 ¶¶ 33, 35–36; D. 59-1 at 10. In November 2017, Bortolami wrote Richman with detailed notes on issues that had arisen with Naimark. D. 52 ¶ 37. Bortolami mentioned, among

other things, the June 2017 conference and that Naimark regularly arrived at work between 10:30 and 11:30 a.m., leaving by 4:30 p.m., and told his supervisors he was otherwise working remotely, but his productivity could not be tracked as he failed to report his hours promptly. D. 59-4. Richman replied that Bortolami's comments were consistent with his own impressions. D. 52 ¶ 38. Bortolami forwarded the report to David Brecher ("Brecher") in Human Resources. Id. ¶¶ 34, 38; D. 59-4.

### C. 2017 Performance Review and Performance Improvement Plan

Employees at BAE receive an annual, written performance review ("PDR") in which they receive grades from one (lowest) to five (highest). Id. ¶ 59. Naimark received a two in 2013, and threes in 2014, 2015 and 2016. Id. ¶ 60. Bortolami attempted to schedule Naimark's 2017 review for the week of January 15, 2018. Id. ¶¶ 66–67. Naimark refused to do a one-on-one review with Bortolami and instead wrote to Brecher, requesting that HR monitor his 2017 PDR. Id. ¶ 68. Brecher met with Naimark to discuss his concerns. Id. ¶¶ 69–70. On January 24, 2018, Bortolami sent a draft of Naimark's PDR to Richman, which Richman subsequently edited. Id. ¶¶ 72, 76. The review noted that Naimark spent 50% of his time on billable work (but was expected to spend 90%), as well as his unsatisfactory VANA deliverables, the presentations that Naimark did not adequately prepare for, his last-minute completion of tasks that required fixes and edits from his colleagues, and his issues arriving at work on time and for full days. Id. ¶¶ 62–64, 76. That same day, Richman and Bortolami met with Brecher to discuss developing a performance improvement plan ("PIP") for Naimark. Id. ¶¶ 74–75. Bortolami posted Naimark's review on February 7, 2018. Id. ¶ 84.

Later that day, Naimark emailed BAE's ethics officer, Michael Claffey ("Claffey") stating that he had been a subject of "systemic retaliation" from his manager. Id. ¶ 85. Claffey and

Brecher investigated the allegation in Naimark's email and concluded that no violation had occurred.  Id. ¶ 88, 91–92.[2]

On March 26, 2018, Richman, Bortolami and Brecher met with Naimark to discuss his 2017 review and to present the PIP.  Id. ¶ 93.  The PIP established four performance objectives for Naimark:  1) 70% staffing on billable projects, 2) improved work quality, with oversight and guidance, 3) attendance at the office during regular business hours (8:30 a.m.-5:30 p.m.), and 4) improved teamwork and communication.  Id. ¶ 94.  The PIP required Naimark to be staffed at the 70% billable level within 60 days.  D. 53-12 at 7.  Naimark objected to Bortolami's supervision of the PIP and Richman agreed to supervise Naimark during the PIP period.  D. 52 ¶ 95.

### D.     Request for Accommodation

The day after Naimark's PIP meeting, Naimark emailed Richman to request an "effective working schedule" that would allow him to arrive at work at 10:00 a.m., citing to traffic concerns and health issues.  Id. ¶¶ 96–97.  As to traffic, Naimark noted that leaving later would avoid rush hour and save him time.  Id.  As to his health, Naimark mentioned that he wakes up early, either due to his "advanced age" or to "the stressful situation in the office."  Id.  Brecher replied to Naimark's request with forms and documentation for BAE's accommodation process, which

---

[2] Naimark made several additional requests that Claffey and other BAE management reopen an investigation into his claims about his PDR, his PIP, and other issues, like BAE's unsuccessful attempt to secure a second phase of the VANA project from AFRL.  Id. ¶¶ 113, 117, 120–121, 132–34.  When his requests to Claffey proved unsuccessful, Naimark reached out to the lead ethics officer for BAE and requested a meeting.  Id. ¶ 125.  Such attempts to lodge ethics complaints in response to his PIP status meetings continued throughout April and May 2018.  Id. ¶¶ 127–28, 132–34, 142–43, 152, 157, 170.  On May 9, 2018, Naimark made a separate attempt to initiate an ethics investigation, this time regarding labor charges on VANA, which he sent to senior management at BAE's parent company, including its General Counsel and Chief Ethics Officer. Id. ¶¶ 159–161.  A senior attorney at BAE investigated this complaint and found it to have no merit.  Id. ¶ 164.  On June 5, 2018, Naimark again emailed senior management and claimed that issues he had raised in his May 9, 2018 email had not been addressed.  Id. ¶ 186.

included medical documentation for Naimark to complete.  Id. ¶ 98.  Richman and Becher informed Naimark that his request to arrive at 10:00 a.m. was under formal consideration, but it would be informally allowed while his request was under consideration, and Naimark's PIP was adjusted accordingly.  Id. ¶ 100.

On April 9, 2018, Naimark emailed two letters from medical providers in support of his request.  Id. ¶ 110.  The first letter, from Naimark's primary care provider, stated that "[d]ue to a medical condition it would be beneficial for [Naimark] to have flexible work hours such as a late start time and/or remote work from home whenever possible," but did not specify any medical condition that Naimark had.  Id.  The second letter, from Naimark's therapist, stated that Naimark was experiencing anxiety, insomnia and a depressed mood, and recommended "more flexible working hours."  Id.  The next day, Lynn Ross ("Ross") of HR informed Naimark that these letters did not adequately specify an actual medical condition and treatment plan, and that Naimark still needed to submit a Confidential Request for Accommodation form.  Id. ¶ 115.  Naimark submitted the form on April 12, 2018, and supplemental materials supporting same.  Id. ¶ 116.  Naimark asserted that his medical condition impaired the following major life activities:  "sleeping, driving in traffic, interacting in hostile environment," and that driving in traffic made him anxious and the hostile work environment he perceived was "counterproductive to concentration."  Id.

On April 18, 2018, Ross emailed Naimark to explain that his physician statement needed to address specific life activities that were impaired by his medical condition and to propose a specific accommodation to address that condition.  Id. ¶ 126.  Naimark replied that his medical condition was the result of mistreatment by his management, and that he hoped that when the mistreatment ended, his conditions would be resolved.  Id.  Naimark requested that his 10:00 a.m. start request be approved immediately.  Id.  On April 27, 2018, Ross informed Naimark that his

request would be temporarily granted, pending the receipt of supporting medical documentation. Id. ¶ 136.  Ross continued to ask Naimark for medical documentation to support his initial request, which Naimark never provided.  Id. ¶¶ 145–146, 169.

### E. Work Issues in 2018 While on PIP

Throughout the PIP period, Richman communicated with Naimark about satisfying its goals, but Naimark failed to do so.  See id. ¶¶ 122-24, 129-30, 150-56, 173-79.  Meanwhile, Naimark sought stoppage of the PIP, transfer, promotion or severance, complaining about his supervision by Bortolami and Richman.  See id. ¶¶ 103, 108-11, 122, 138-39.

After the 60-day PIP period ended in June 2018, Richman and Brecher evaluated Naimark's performance and determined he had not met any of the PIP objectives.  Id. ¶¶ 172–73.  Specifically, Naimark frequently did not arrive at work on time, even with the 10:00 a.m. start time, and did not meet the PIP requirement that he spend 70% of his time on billable work, but rather admitted to spending approximately 30% of his time on such work.  Id. ¶¶ 174–79.  Further, work he completed on the Monomoy project had to be redone and BAE had to reverse his billing to not charge the client for it.  Id. ¶ 181.

### F. Termination from BAE

Following Richman and Brecher's evaluation of Naimark's PIP, they decided to initiate Naimark's termination.  Id. ¶ 184.  Bortolami was not involved in the decision to terminate Naimark.  Id. ¶ 185.  Richman and Brecher met with Naimark on June 13, 2018, where they informed him of the termination and gave him a memorandum that explained the basis for the termination was his failure to achieve the PIP goals.  Id. ¶ 189.

## IV.     Procedural History

Naimark initiated this action in Middlesex Superior Court. D. 1-1. BAE removed the action to this Court. D. 1. BAE has now moved for summary judgment. D. 50. The Court heard the parties on the pending motion and took the matter under advisement. D. 68.

## V.      Discussion

### A.      Age Discrimination (Count I)

Naimark alleges that BAE discriminated against him due to his age, in violation of Mass. Gen. L. c. 151B, § 4. D. 1-1 at 14. Since the undisputed record is devoid of any direct evidence of age discrimination, the Court follows the McDonnell Douglas framework, the "three-stage order of proof set forth by the United States Supreme Court under the Federal antidiscrimination provisions of Title VII." Blare v. Husky Injection Molding Sys. Bos., Inc., 419 Mass. 437, 440-41 (1995); Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 48 (1st Cir. 2008).

Under this framework, Naimark must first establish a prima facie case of age discrimination. Torrech-Hernandez, 519 F.3d at 48. Establishing a prima facie case requires Naimark to show that "he was at least 40 years old; that his job performance met his employer's reasonable expectations; that he experienced an adverse employment action; and that younger persons were retained in the same position or that the employer otherwise did not treat age neutrally." Currier v. United Tech. Grp., 393 F.3d 246, 254 (1st Cir. 2004). It is undisputed that Naimark is in the protected age category. As to the second element of the prima facie case, however, BAE's stated nondiscriminatory reason for Naimark's termination was his failure to meet the objectives set out under the PIP (i.e., Naimark's performance in 2018), D. 52 ¶ 189, but the undisputed record is clear that BAE was unsatisfied with Naimark's performance well before the PIP was put in place. For example, Naimark received lower ratings (i.e., "2" and "3" ratings) on

performance reviews since beginning his employment at BAE in 2013. Id. ¶ 60. Moreover, beginning in 2017, Naimark's supervisors were dissatisfied with his technical work on VANA, his client communication and his presentation preparation and execution. See, e.g., id. ¶¶ 20–23. Naimark has not supplied any evidence that his work met BAE's expectations for his performance. See D. 61 at 28. As to the fourth element, there is no evidence in the undisputed record that BAE retained younger employees or that BAE otherwise did not treat age neutrally. Again, Naimark makes no argument as to this element, which concludes, without any support, that Naimark "has set forth a prima facie case of discrimination on the basis of age." See D. 61 at 28.

Even if Naimark had established his prima facie case, his age discrimination claim still fails. If the plaintiff succeeds in establishing these elements, the burden of production shifts to the employer to articulate "a legitimate, nondiscriminatory basis for its adverse employment action." Torrech-Hernandez, 519 F.3d at 48 (citation omitted). If shown, "the presumption generated by the employee's prima facie case disappears, and the employee then has the burden to prove that the reason advanced by the employer for the adverse employment action constituted a mere pretext for unlawful age discrimination." Koster v. Trans World Airlines, Inc., 181 F.3d 24, 30 (1st Cir. 1999); see Del Valle-Santana v. Servicios Legales De Puerto Rico, Inc., 804 F.3d 127, 129-30 (1st Cir. 2015) (explaining that plaintiff must show "that age was the but-for cause of the employer's adverse action") (quotation omitted). Here, BAE has satisfied its burden with the record that it terminated Naimark because he failed to meet the objectives set forth in his PIP. See D. 52 ¶¶ 184–85, 189.

Accordingly, the Court turns to the final stage of inquiry, in which the burden shifts to Naimark who "must put forth sufficient facts for a reasonable fact-finder to conclude that [Defendants'] proffered reason for discharging him is a pretext . . ." Melendez, 622 F.3d at 52.

"'Massachusetts is a pretext only jurisdiction,' so a plaintiff . . . 'need only present evidence from which a reasonable jury could infer that 'the [employer's] facially proper reasons given for its actions against him were not the real reasons for that action.'" Brader v. Biogen, Inc., 983 F.3d 39, 59 (1st Cir. 2020) (quoting Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 682 (2016)) (alteration in original). "[T]he issue for purposes of establishing pretext 'is not whether reasonable jurors could find that [BAE] lacked good cause to terminate [Naimark] . . . but, rather, whether [Naimark] made a substantial showing that the reason given for the termination was false." Tian v. Aspen Tech., Inc., 53 F. Supp. 3d 345, 365 (D. Mass. 2014) (quoting Williams v. Raytheon Co., 220 F.3d 16, 19 (1st Cir. 2000)).

Here, again, Naimark concludes without any support that he has "proved that the reasons advanced by BAE for the termination of his employment are pretextual." See D. 61 at 28. But the undisputed record shows that the ultimate decision to terminate Naimark was based on his failure to meet the PIP's objectives. See D. 52 ¶¶ 174–180, 184–85, 189. Accordingly, Naimark has not pointed to any basis for a factfinder to infer that BAE's reliance upon Naimark's performance under the PIP was untrue and therefore pretext.[3]

---

[3] At the motion hearing, Naimark's counsel referenced e-mails between senior BAE management regarding Naimark's complaints about his performance reviews, work environment and BAE's alleged ethics violations, as indicative of pretext as they show hostility toward Naimark. See, e.g., D. 63-8; D. 63-11. These isolated statements, even viewed together, are insufficient to show that BAE's stated reason for Naimark's termination was not true. First, "[s]tatements made by those who are not involved in the decisional process 'normally are insufficient, standing alone, to establish . . . pretext.'" Bennett v. Saint-Gobain Corp., 507 F.3d 23, 31 (1st Cir. 2007) (quotation omitted). Here, there is undisputed evidence that Richman and Brecher supervised Naimark's PIP and that Richman decided to terminate Naimark based on failure to meet same and these stray remarks do not suggest otherwise. See D. 52 ¶¶ 174–180, 184–85, 189; Ortiz-Rivera v. Astra Zeneca LP, 363 F. App'x 45, 47 (1st Cir. 2010) (citing Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 36 (1st Cir. 2001).

### B.      Disability Discrimination (Counts II and III)

Massachusetts law prohibits an employer from "dismiss[ing] from employment or refus[ing] to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer's business." Godfrey v. Globe Newspaper Co., 457 Mass. 113, 119 (2010) (quoting Mass. Gen. L. c. 151B, § 4(16)). As used in the statute, the "term 'handicap' means (a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment." Mass. Gen. L. c. 151B, § 1 (17).[4]

Naimark's disability discrimination claim follows, like his age discrimination claim, the McDonnell Douglas "three-stage order of proof." Blare, 419 Mass. at 440 (1995). Naimark must first establish a prima facie case of employment discrimination on the basis of handicap: "[first] that he is 'handicapped' within the meaning of the statute; [second] that he is a 'qualified handicapped person' capable of performing the essential functions of his job either without accommodation or with a reasonable accommodation; and [third] that he was subject to an adverse employment action because of his handicap." Godfrey, 457 Mass. at 120.

---

[4] Count II alleges discrimination on the basis of disability and Count III alleges discrimination on the basis of "perceived disability" in violation of § 151B, which the Court construes to mean that Naimark was "regarded as having such impairment." See Mass. Gen. L. c. 151B, § 1 (17). As such, Counts II and III allege two theories of the same claim, that Naimark was discriminated against "because of his handicap," which the Court analyzes together. See Mass. Gen. L. c. 151B, §§ 1(17), 4(16).

11

As to the first element, BAE challenges Naimark's assertion that he is "handicapped" within the meaning of the statute because he has not shown a substantial impairment. See D. 51 at 29-31. Naimark asserts that "stress and anxiety . . . impacted his ability to work and to drive to work." D. 61 at 25. Under Mass. Gen. L. c. 151B, § 1(20), "major life activities" include "working," and the Court will assume *arguendo* that driving to work falls under this definition. An impairment substantially limits an individual's ability to work only "if it prevents or significantly restricts the individual from performing a class of jobs or a broad range of jobs in various classes." City of New Bedford v. Mass. Comm'n Against Discrimination, 440 Mass. 450, 464-65 (2003) (quoting MCAD Guidelines: Employment Discrimination on the Basis of Handicap Chapter 151B, § II.A.6 (1998)). The undisputed record here shows that Naimark wanted to arrive at 10:00 a.m. to avoid rush-hour traffic and wanted a more flexible work schedule to include remote work so that he did not have to interact with Bortolami and other supervisors that created an allegedly stressful work environment for him. D. 52 ¶¶ 96–97, 116, 126. In other words, Naimark's alleged handicap was conditional and situational (i.e., that driving in traffic made him anxious, not that he was consistently stressed or anxious such that he could not drive to work). See id. ¶ 116; Carroll v. Xerox Corp., 294 F.3d 231, 239-40 (1st Cir. 2002) (concluding plaintiff did not establish stress as a disability because it did not significantly restrict employee from working altogether, rather just his particular position at a particular period in time). The undisputed record is otherwise devoid of any facts to suggest that employees at BAE knew of or regarded Naimark as having a stress or anxiety "handicap." Cf. Locke v. W.R. Grace & Co.-Conn., No. 86635, 2004 WL 2915725, at *5 (Mass. Super. Nov. 16, 2004) (concluding that issue of fact existed as to whether defendants took actions based on stress-based disability where "record reflects that the defendants were aware that [plaintiff] had problems handling stress").

Second, even if Naimark could establish his prima facie case of disability discrimination, his claim still fails because, as the Court explained above in regard to the age discrimination claim, there is no evidence of pretext.

Finally, to the extent that Naimark premises his disability discrimination claim on a failure to accommodate, D. 61 at 25-26, such claim also fails. "To prove a reasonable accommodation claim, [Naimark] 'must show that [he] was a 'qualified handicapped person' capable of performing the essential functions of [his] job with reasonable accommodation; [he] requested such accommodation, and [BAE] refused to provide it; and, as a result of this refusal, [he] suffered some harm." Chadwick v. Duxbury Pub. Sch., 97 Mass. App. Ct. 1106, 2020 WL 1280287, at *6 (2020) (quoting Alba v. Raytheon Co., 441 Mass. 836, 843 n.9 (2004)). Here, Naimark cannot show that BAE refused to provide his requested accommodation, a 10:00 a.m. start time, because such request was approved and in effect even pending his submission of additional medical documentation. D. 52 ¶¶ 100, 136.

    **C.**    <u>**Wrongful Termination in Violation of Public Policy (Count IV)**</u>

Naimark alleges that he was terminated for reporting activities he believed were in violation of law, namely BAE's billing practices for government defense contracts. D. 1-1 ¶¶ 33–34, 39. Massachusetts has "permitted redress for at-will employees based on public policy in some circumstances," like "employees who are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 149–50 (1989).

Here, Naimark's public policy claim fails. Such a claim may "proceed only where, 'unless a remedy is recognized, there is no other way to vindicate such public policy,' [and] applies

13

whether the remedy is vindicated by a state or federal statute." Carter v. Tropicana Prod. Sales, Inc., No. 07-cv-10921-RWZ, 2008 WL 190791, at *2 (D. Mass. Jan. 4, 2008) (quoting Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 512 (1985), aff'd, 397 Mass. 1004 (1986); citing Valerio v. Putnam Assoc. Inc., 173 F.3d 35, 46 (1st Cir.1999)). Naimark's claim, that BAE engaged in fraudulent billing practices, falls under the False Claims Act. See Guilfoile v. Shields, 913 F.3d 178, 187-88 (1st Cir. 2019) (citing 31 U.S.C. § 3729). And the False Claims Act "bars an employer from retaliating against an employee 'because of lawful acts done . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of [the FCA]." Id. (quoting 31 U.S.C. § 3730(h)(1)). Under the anti-retaliation provision, relief "shall include reinstatement with the same seniority status that employee . . . would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees," and an action for such relief may be brought in federal district court. 31 U.S.C. § 3730(h)(2). Naimark counters, however, that the False Claims Act is not an "adequate" remedy because the burden on plaintiffs is too high given the Act's supposed requirement that plaintiffs must first give the government an opportunity to investigate and intervene. D. 61 at 11. There is nothing, however, under the False Claims Act that prevents a private citizen from initiating such investigation and intervention by filing a relator action. See U.S. ex rel. Poteet v. Bahler Med., Inc., 619 F.3d 104, 107 (1st Cir. 2010). Accordingly, the False Claims Act provides a comprehensive remedy for Naimark's allegations and precludes Naimark's public policy claim. See Melley, 19 Mass. App. Ct. at 512.

D.     **Retaliation (Count V)**

Naimark presses a retaliation claim under Gen. L. c. 151B, § 4 and asserts that BAE terminated his employment "in retaliation for his having requested reasonable accommodations to what he believed in good faith were disabilities," pointing to "the timing of the two events and the animosity and bias expressed against [Naimark] for invoking his rights."  D. 61 at 27.  The anti-retaliation provisions of the Massachusetts disability discrimination statute prohibit an employer from terminating an employee "because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding" related to same, Staples v. Verizon Data Servs., LLC, No. 18-CV-40208-ADB, 2021 WL 1989952, at *10 (D. Mass. May 18, 2021) (quoting Mass. Gen. L. c. 151B, § 4(4)), or from "coerc[ing], intimidat[ing], threaten[ing] or interfere[ing] with . . . the exercise or enjoyment of any right granted or protected by [chapter 151B]."  Daniels v. Wal-Mart Assocs., Inc., No. 19-cv-11357-RGS, 2021 WL 916088, at *12 (D. Mass. Feb. 18, 2021) (quoting Mass. Gen. L. c. 151B, § 4(4A)).  The same McDonnell Douglas burden-shifting framework applies to Naimark's retaliation claim under Massachusetts law.  See Mole v. Univ. of Mass., 442 Mass. 582, 591–92 (2004).

"To make out his prima facie case, [Naimark must] show that [1] he engaged in protected conduct, [2] that he suffered some adverse action, and [3] that 'a causal connection existed between the protected conduct and the adverse action.'"  Id.  The parties dispute only the third element of the prima facie case.  See D. 51 at 35-36.  Retaliation "against the employee must be shown to be a determinative factor in its decision to take adverse action," Psy-Ed Corp. v. Klein, 459 Mass. 697, 707 (2011), "that is, [that] the adverse action would not have occurred in the absence of the protected activity."  Saxena v. Univ. of Mass. Med. Sch., 442 F. Supp. 3d 395, 403 (D. Mass. 2020) (citation omitted).

Here, Naimark has failed to show that his requested accommodation, a 10:00 a.m. arrival, caused his termination. See id. As a preliminary matter, Naimark's performance issues and the imposition of the PIP both predate Naimark's request for an accommodation (10:00 a.m. arrival). See D. 52 ¶¶ 20-23, 35-37, 94, 96-97; D. 61 at 25 (asserting that Naimark sought accommodation prior to PIP). See Mole, 442 Mass. at 594 (explaining that "[w]here . . . adverse employment actions or other problems with an employee predate any knowledge that the employee has engaged in protected activity, it is not permissible to draw the inference that subsequent adverse actions, taken after the employer acquires such knowledge, are motivated by retaliation"). Once Naimark made the request, he was allowed to arrive at 10:00 a.m. and his PIP was adjusted accordingly. Id. ¶ 100. Consideration of Naimark's accommodation request was handled by HR, not Richman, and his desired accommodation was conditionally approved as soon as he made it. Id. ¶¶ 98-101; D. 63-12. As to alleged animosity, Naimark points to a subsequent e-mail chain a week after he made his request, where Naimark asked Richman to schedule their PIP review meetings for thirty minutes, instead of an hour, due to the same symptoms raised in his accommodation request (e.g., stress). D. 61 at 14. Richman forwarded Naimark's e-mail to BAE management, stating that "the medical angle is now being played up" since Naimark claimed "he is unable to sit for a 1-hour meeting like the one we held on Monday to review his PIP." D. 63-8 at 2. The record, however, contains no evidence that Naimark pursued the thirty-minute meeting request as an accommodation with HR and Richman's e-mail does not relate to Naimark's accommodation request with HR, but rather the length of Naimark's PIP supervision meetings. See id. As to timing, Naimark was terminated on June 13, 2018, approximately three months after his accommodation request. See D. 52 ¶¶ 96-97, 189; Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 25 (1st Cir. 2004) (noting that "cases that accept mere temporal proximity between an

16

employer's knowledge of protected activity and an adverse employment action . . . must be very close" and that "[t]hree and four month periods have been held insufficient to establish a causal connection based on temporal proximity") (citations and quotations omitted); Doherty v. Donahoe, 985 F. Supp. 2d 190, 206 (D. Mass. 2013) (granting summary judgment because "[t]emporal proximity is absent and no other facts raise an inference or sufficiently support such a causal connection").

Finally, as described above, summary judgment is appropriate where Naimark has made no showing that BAE's stated reason for his termination, failure to meet the PIP objectives, was pretext.  See Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 397 (2016); Armery v. Potter, 497 F. Supp. 2d 134, 142 (D. Mass. 2007).

## VI.   Conclusion

For the foregoing reasons, the Court ALLOWS BAE's motion for summary judgment, D. 50.[5]

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[5] In light of this ruling, the Court denies BAE's motion for leave to file a reply brief, D. 66, as moot.